UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

CURTIS HARRIS,

               Plaintiff,               Case No. 1:10-cv-1301

v.                                         Honorable Janet T. Neff

PRISON HEALTH SERVICES, INC. et al.,

               Defendants.

_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Discussion**

I.       Factual allegations

Plaintiff Curtis Harris presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Ionia Maximum Correctional Facility (ICF). The events underlying his complaint occurred while he was housed at ICF and at the Marquette Branch Prison (MPB). Plaintiff sues Prison Health Services, Inc. (PHS); PHS Doctors Richard Czop, Scott Holmes, Richard Bohjanen; and PHS Physician Assistants Michael Kennerly and Joshua Kocha. He also sues the following ICF employees: Registered Dietician Patricia Wallard; Health Unit Manager Nurse Jody Lebarre; Nurses J. Schad, Byran Deeren, Betty Jo Kemp, Ann Maroulis, Jodi Swain, Magen Johnson, Christy Jastifer, Angela Todd, Rebacca Delano, (unknown) Smith, and (unknown) Epharim. In addition, Plaintiff sues MDOC Region I Risk Management Nurse Jeannie Stephenson and the following MBP health-care officials: Nurses Larry Hill, Sandra Shaker, John Kimsel, Michael Grant; and Registered Dietician Kelly Wellman.

Plaintiff's complaint concerns the adequacy of his medical treatment between February 11, 2010 and the present.[1] Plaintiff alleges that he was diagnosed with hypoglycemia in 2007. Plaintiff arrived at ICF on February 11, 2010. Upon arrival, he was interviewed by Defendant Nurse Jodi Swain regarding his medical conditions and needs. At that time, Plaintiff told Swain that, among other conditions, he had been diagnosed with hypoglycemia and had a medical detail for three vegetarian snacks per day. Later that same day, Defendant Swain sent Plaintiff a progress note stating, "In your intake you stated you receive three snack bags for hypoglycemia. There is no diagnosis nor accommodation of such a request in your record. Please kite if you feel this is error."

---

[1]At various points in his complaint, Plaintiff incorporates by reference the exhibits he attaches to the complaint. The Court has relied on Plaintiff's exhibits for clarification of Plaintiff's more conclusory allegations.

Plaintiff immediately filed a grievance about his need for snacks, stating that he was "currently suffering" because of his hypoglycemia. (Compl. ¶ 3, Page ID #10.) On February 12, 2010 at 7:30 a.m., Plaintiff stopped Defendant Nurse Maroulis during her morning rounds, giving her a health-care request form about his need for snacks to treat his hypoglycemia. Maroulis investigated and, at 8:07 a.m., had Health Unit Manager Diane Shaw reprint the order that Plaintiff should receive his snack diet until a medical provider had reviewed his medical condition. On February 14, 2010, Plaintiff began receiving his snacks.

On March 16, 2010, Defendant Nurses Deeren and Lebarre interviewed Plaintiff about his symptoms and diagnosis. Defendant Dietician Wallard evaluated Plaintiff's electronic medical record on March 22, 2010. She then recommended that his snack detail be discontinued. On March 26, 2010, Defendant Dr. Czop reviewed the recommendation and medical record and ordered that Plaintiff's special diet detail be discontinued. Plaintiff stopped receiving his snacks on March 31, 2010.

Plaintiff's blood sugar levels were checked on April 3, 2010, approximately 35 minutes after eating, and at 3:40 p.m. Blood sugar levels were 94 and 71, respectively. According to Plaintiff's complaint, MDOC standards state that blood sugar levels 70 and lower are considered low, and hypoglycemia is diagnosed at 50 and lower. Plaintiff complains about the timing of the first blood sugar test.

Plaintiff describes hypoglycemia as a disease that, if severe and untreated, can result in high blood pressure, mood swings, overall weakness, light-headedness, unconsciousness, coma, and death. Plaintiff alleges that, when his own symptoms are severe, he may experience temporary blindness in his right eye, weakness, light-headedness, vomiting, rapid weight loss, and pain and

burning in his chest, stomach, legs, feet and head. He alleges that, from April 1, 2010 to June 16, 2010 (when he was transferred to MBP), he requested health-care treatment for his hypoglycemia and a hiatal hernia, as well as a check-up on the stent and coils inserted in 2005 during surgery to repair a brain aneurysm. Plaintiff received responses to his kites indicating that he should take his reflux medicines as ordered, that he should eat all of his food at meals and buy snacks at the commissary, as necessary. He was also told that he should contact health-care for a glucose check whenever he felt his blood sugar was low. Plaintiff alleges that, between April 1, 2010 and June 16, 2010, he requested blood sugar tests nearly every day, one to three times per day. ICF Defendants Czop, Kennerly, Lebarr, Deeren, Kemp, Maroulis, Johnson, Jastifer, Todd, Delano, Smith and Epharim allegedly denied his requests. Plaintiff complains that on five of those occasions, April 2, April 8, April 16, April 21 and April 22, 2010, he experienced symptoms including head, chest, stomach and leg pains, blurred vision and lightheadedness. He alleges that he vomited on April 8, April 21, April 22, and May 22.

Plaintiff was seen by Defendant Kennerly on March 31, 2010, but Plaintiff allegedly was ordered to leave before he was fully examined, ostensibly because of a prior dispute with Kennerly. Plaintiff was seen by Defendant Czop on May 20, 2010. At that time, Czop indicated that he would request a follow-up angiogram to check the aneurysm, and he forwarded a request for the procedure. In addition, Czop ordered lab tests. Dr. Czop also changed Plaintiff's medication to better control Plaintiff's hypertension. Plaintiff was told to make a follow-up appointment with Czop in ten days.

Plaintiff initially was scheduled to have his blood drawn on May 26, 2010, but the test was rescheduled for June 3, apparently because of an error in the paperwork. Czop also saw

Plaintiff on June 3, 2010. At that time, Czop informed Plaintiff that lab results would be back in three to four days. Czop stated that he would order an "A-1-C" blood test to check his blood sugar. Plaintiff did not see Czop again before he was transferred to MBP. He complains that the A-1-C test was never ordered and he never received an angiogram.

Plaintiff disputes Czop's qualifications to treat his neurological condition. He also complains that his intracranial stent is misdescribed in a grievance response as a "clip and coil." He acknowledges that an angiogram, a type of CT scan, can reveal whether blood has leaked into the brain, but he states that it cannot show whether an aneurysm has bulged or the stent has moved. He claims that other unspecified tests should be run. He further contends that the ICF Defendants are grossly incompetent.

After arriving at MBP on June 18, 2010, Plaintiff advised MBP Dietician Wellman that he previously had been diagnosed with hypoglycemia and required three vegetarian snacks per day. Plaintiff's blood sugar was tested on June 25, June 26, June 30, and other dates. Defendants reported that the results showed that Plaintiff's blood sugar was fine and that he was a healthy weight. Plaintiff alleges that, contrary to Defendant's report, his blood sugar results were on some occasions in the low 60s and 50s. Plaintiff was seen by Defendant Physician Assistant Kocha on July 1, 2010. Kocha reordered Plaintiff's medications. Blood tests also were ordered. On August 17, 2010, Plaintiff had four blood tests, including an A-1-C test. On August 25, 2010, Kocha ordered one evening snack per day for Plaintiff. Plaintiff was seen by Defendant Bohjanen on August 30. Bohjanen diagnosed Plaintiff with hypoglycemia and prescribed iron tablets and three snacks per day. Bohjanen allegedly told Plaintiff that he would call him out in a few days for a follow-up consultation. Plaintiff did not see Defendant Bohjanen before he was transferred back to

ICF on September 27, 2010. With respect to Plaintiff's request for follow-up on his aneurysm, Plaintiff was notified that Defendant Stephenson had determined that a CT scan was not clinically indicated at that time and that Plaintiff would continue to be monitored for changes in symptoms related to the past problem.

When Plaintiff returned to ICF on September 27, 2010, he was seen by Nurse Laughhunn for an intake interview. Laughhunn sent a copy of Plaintiff's medical order regarding snacks to the ICF kitchen. Plaintiff did not receive some or all of his snacks and wrote two grievances. In response, another copy of the snack detail was sent by Defendant Todd. Plaintiff complained to Defendant Maroulis on October 1, indicating that he was not receiving all of his snacks. Maroulis again sent a copy of the detail to food service. When Plaintiff complained again to Maroulis on October 2, Maroulis called food service, discovering that Plaintiff had mistakenly been scheduled for a once-a-day snack. The records were corrected to indicate three snacks per day.

On October 1, 2010, ICF Dietician Wallard reviewed Plaintiff's medical file to assess the need for snacks. In a detailed report of his review, Wallard determined that Plaintiff had maintained a normal weight; that Plaintiff was never given the proper diagnostic for hypoglycemia (a two-hour post-prandial blood test); that Plaintiff had numerous normal blood sugar tests over a period of months, and that, notwithstanding Plaintiff's continual demands for snacks, he was a normal weight and his other records did not support the need for snacks. Wallard therefore recommended to the medical provider that snacks be discontinued. On October 15, 2010, Plaintiff was interviewed about his diet by Defendant Health Unit Manager Lebarre. Plaintiff complains that Lebarre told him that health-care was tired of him. Later that day, Defendant Dr. Czop reviewed Plaintiff's record and the recommendation from Defendant Wallard and concluded that Plaintiff's

dietary needs could be met with regular meals. Czop therefore discontinued the snack order. Plaintiff complains that neither Wallard nor Czop interviewed him personally before discontinuing the order, though he admits seeing Lebarre.

For relief, Plaintiff seeks follow-up examinations and treatment for his aneurysm by a neurological specialist. He also seeks treatment by an enterologist for his hiatal hernia and treatment for his hypoglycemia. Further, he seeks compensatory and punitive damages.

II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P.

8(a)(2)); *see also Hill v. Lappin*, ___ F.3d ___, 2010 WL 5288892, at *2 (6th Cir. Dec. 28, 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is "to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore*

*v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to "show that prison officials had "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (internal quotation marks omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55;

*Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

Plaintiff complains that Defendants were deliberately indifferent to three of his serious medical conditions: his hypoglycemia, his hiatal hernia, and his prior aneurysm. Plaintiff's allegations about the treatment of his hypoglycemia, which constitute the majority of the complaint, fall short of presenting an objectively substantial risk of serious harm. Despite the several-month periods in which he did not receive snacks, Plaintiff does not allege that he lost weight, much less an unhealthy or dangerous amount of weight. And Plaintiff continues to report a healthy weight. In addition, Plaintiff does not allege that he experienced any other significant harm beyond discomfort. He has not lost consciousness or experienced lightheadedness that caused him injury. Indeed, Plaintiff alleges only a handful of occasions on which he experience any lightheadedness

or weakness – notwithstanding his almost daily demands for blood sugar tests and a snack diet. Such allegations fail to demonstrate the sort of obvious and serious need for medical care required under the Eighth Amendment.

Moreover, Plaintiff cannot demonstrate that any Defendant had a sufficiently culpable state of mind in denying him his snacks. Plaintiff was seen on numerous occasions by medical staff. He had multiple evaluations for low blood sugar and hypoglycemia. While some medical providers found the evidence sufficient to warrant daily snacks, other medical providers, reviewing the same record and symptoms, concluded that Plaintiff's medical needs could be met through the regular meal program. Plaintiff has been given advice about how to control his blood sugar by appropriate food intake and the avoidance of refined sugars. Although Plaintiff insists that he should have been diagnosed as hypoglycemic and given snacks, he has failed to allege more than a disagreement with some of the Defendant medical providers. *See Boles v. Dansdill*, 361 F. App'x 15, 19 (10th Cir. 2010) (allegation that prisoner did not receive snack bags for his hypoglycemia amounted only to a disagreement about treatment unless it results in substantial harm). Indeed, Plaintiff repeatedly complains that Defendants were incompetent and negligent – not that they intentionally ignored his serious medical needs. In sum, Plaintiff's allegations about his hypoglycemia amount to nothing more than a dispute about what constitutes appropriate treatment.

Plaintiff's allegations about his hiatal hernia are wholly inadequate. He does not complain of symptoms that he relates to his hiatal hernia. Instead, he complains of nausea and stomach pain as part of his litany of complaints that he alleges were related to his hypoglycemia. In addition, Plaintiff acknowledges that he has been diagnosed with the condition and seen by medical personnel. He attaches medical records indicating that he has been prescribed reflux

medication. In fact, at no point in his complaint does he allege what symptoms Defendants allegedly ignored and what further treatment he wants for his hiatal hernia. He merely demands to be referred to a gastroenterologist because the medical providers at ICF and MBP are unqualified to treat him. Such allegations fall far short of stating an objectively serious, untreated medical need or that any individual Defendant was deliberately indifferent to that need.

Finally, despite his repeated demands for treatment of his aneurysm, Plaintiff fails to allege any symptom that would suggest the existence of an objectively serious condition that has not been treated. Plaintiff simply asserts that, because he had an aneurysm in 2005 that was surgically repaired by a stent-and-coil procedure, he must receive follow-up with a neurologist in 2010 to make sure that no new aneurysm has developed. Plaintiff has not alleged any symptom caused by his repaired aneurysm that Defendants have ignored. In sum, he fails to allege that Defendants were deliberately indifferent to any serious medical need.

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997) (overruled on other grounds by *Jones v. Bock*, 549 U.S. 199, 206, 210-11 (2007)). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from

proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: February 18, 2011          /s/ Janet T. Neff
                                  Janet T. Neff
                                  United States District Judge